UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TREKESSA GILLIAM,

       Plaintiff,

v.                                                    Case No.:  2:24-cv-990-SPC-NPM

JUSTIN FIELDS, FORT MYERS
POLICE DEPARTMENT, JARI
SANDERS, CITY OF FORT
MYERS, NICOLE GREEN, TYLER
WILLIAMS, BRANDON BIRCH,
RYAN AMADOR, JAMES
MOSCHELLA, GREGORY
REDDINGTON, ERIC SALTER,
and HARRISON WILLIAMS.

       Defendants.
_____/

## **OPINION AND ORDER**

Before the Court is Defendants City of Fort Myers, Fort Myers Police Department, Chief of Police Jason Fields, and Officers Jari Sanders, Nichole Greene, Harrison Williams, Brandon Birch, Eric Salter, Ryan Amador, James Moschella, and Gregory Reddington's Motion to Dismiss (Doc. 15) and Plaintiff Trekessa Gilliam's Response (Doc. 17).[1]  For the below reasons, the Court grants the motion in part.

---

[1] Plaintiff filed her first response (Doc. 16) within the time allotted in Local Rule 3.01(c), although it exceeds the page limit set in Local Rule 3.01(a).  Plaintiff filed a second almost

## Background

This is a civil rights case. Plaintiff alleges the following in her amended complaint.[2] In October 2023, Plaintiff was a passenger in a vehicle that Officer Sanders pulled over for illegal window tint. (Doc. 12 ¶ 22–23). Other officers were at the scene, although the amended complaint says little about them. Officer Sanders instructed one of these officers to write the driver a ticket for one of the windows. (*Id.* ¶ 25). Sometime later, Plaintiff and the driver asked if they could have the ticket and be on their way, but Officer Sanders told them that they would have to wait for a drug dog's free-air sniff. (*Id.* ¶ 26). Officer Sanders then told Plaintiff to step out of the vehicle. (*Id.* ¶ 31). Whether the free-air sniff occurred at that time is unclear—Plaintiff's allegations jump from her exiting the vehicle to Officer Williams searching the vehicle. (*Id.* ¶¶ 32–33). Next, Officer Sanders told Officer Williams to notify him if he found probable cause so that Sanders could get a female officer to search Plaintiff. (*Id.* ¶ 33). Officer Sanders hinted to Officer Birch that he suspected Plaintiff was concealing something for the driver. (*Id.* ¶ 34).

---

identical response (Doc. 17) that is within the page limit, but that response was filed one day after the deadline. The Court accepts and considers only the second response in ruling on the motion.

[2] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiff. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

Officer Williams found nothing in the vehicle. (*Id.* ¶ 35). Officer Sanders then asked Plaintiff for her purse and threatened her with detention and arrest if she did not comply. (*Id.* ¶¶ 37–38). Nothing was found in the purse. (*Id.* ¶ 39). Still, Officer Sanders called Officer Greene to search Plaintiff. (*Id.*). Officer Sanders informed Officer Greene that the driver had some cocaine on his shoe, he had an idea where the rest of the cocaine might be, and he had gloves for her in his vehicle. (*Id.* ¶ 40–41). Plaintiff "declined" a search. (*Id.* ¶ 42). Nevertheless, Officer Greene searched under Plaintiff's dress and swiped around her genital area. (*Id.* ¶¶ 42–45). Ultimately, she found nothing on Plaintiff. (*Id.* ¶ 46).

Plaintiff alleges that Officers Moschella, Salters, Williams, Amador, and Reddington did not intervene, but they commented that the situation was strange since nothing was found in the vehicle. (*Id.* ¶ 48).

Plaintiff sues the City of Fort Myers, Fort Myers Police Department, Chief of Police Jason Fields, and all the officers on the scene under 42 U.S.C. § 1983 and brings related state-law claims. (Doc. 12). Defendants move to dismiss. (Doc. 15).

## Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). If a court can draw reasonable inferences of a defendant's liability from the facts pled, then the claim is "facially plausible." *Iqbal*, 556 U.S. at 678. "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action" are simply not enough. *Twombly*, 550 U.S. at 555.

## Analysis

Before resolving Defendants' arguments, the Court must address the amended complaint. It is a mess. Plaintiff—who is represented by counsel—uses inconsistent typefaces. She misnumbers her paragraphs. (Doc. 12 at 15–16, 29, 42) (misplacing ¶ 94, numbering from ¶ 62 to ¶ 48, and numbering from ¶ 149 to ¶ 140). She appears to misname both the Chief of Police (Jason Fields—not Justin Fields, the quarterback) and an officer on the scene (Nichole Greene—not Nicole Green). (Doc. 15 at 1–2). She manages to describe herself as both "PLAITNIFF" and "PALINTIFF," on the same page no less. (Doc. 12 ¶¶ 38, 41). She refers to herself as "him" and "his." (*Id.* ¶¶ 53, 56, 145). And she references a mysterious "ROBERTS," who apparently failed to train officers at some point (perhaps in another case). (*Id.* ¶ 75). These are just examples. The amended complaint is riddled with typos. Plaintiff must fix it.

Now for the legal arguments. The Court starts with the arguments that broadly apply to the amended complaint and then turns to the arguments specific to each claim. Defendants argue that the amended complaint (1) is a

shotgun pleading, (2) improperly names the Fort Myers Police Department as a defendant, (3) names Defendants in incorrect capacities, and (4) improperly seeks punitive damages against the City. (Doc. 15 at 4–7, 22).

First, the amended complaint is a quintessential shotgun pleading. Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Shotgun pleadings violate Rule 8 because "they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).

The amended complaint "contain[s] multiple counts where each count adopts the allegations of all preceding counts[.]" *Id.* at 1321. In each count, Plaintiff "repeats all of the allegations contained in the Complaint thus far above, [*sic*] and incorporates same as if fully set forth at length herein." (Doc. 12 at 12, 15, 19, 27, 28, 30, 32, 33, 35, 38, 40, 42) (paragraphs misnumbered). Under each count, Plaintiff must cite the specific factual paragraphs that pertain to that count.

The amended complaint also contains "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1321–23. The most problematic counts are

Count VIII, alleging Intentional Infliction of Emotional Distress ("IIED"), and Count XI, alleging violations of the Florida Constitution. (Doc. 12 ¶¶ 109–18, 143–48). Plaintiff brings these counts against "All Defendants." (*Id*. at 33, 40). Plaintiff's group pleading fails to provide sufficient notice of the challenged conduct as to each defendant. Plaintiff alleges "[a]ll defendants . . . illegally searched the Plaintiff on the side of the road[.]" (*Id*. ¶ 110). And she asserts "[a]ll Defendants have violated Plaintiff's constitutionally-protected rights." (*Id*. ¶ 147). But earlier in her amended complaint, she alleges that Officer Sanders arranged the search of her person, Officer Greene searched, and the other officers commented on what had unfolded. (*Id*. ¶¶ 39–48). Because each officer played a distinct role in this incident, Plaintiff must point to the specific facts that support her claims against each defendant. She cannot simply lump them together with conclusory allegations. *See Milfort v. Rambosk*, No. 2:21-CV-366-SPC-MRM, 2022 WL 138097, at *2 (M.D. Fla. Jan. 14, 2022) (rejecting group pleading against "all Defendants"). While Counts VIII and XI are particularly egregious, they are only examples—Plaintiff must fix the group pleading throughout her amended complaint.

Second, the amended complaint improperly names the Fort Myers Police Department as a defendant. Plaintiff brings Counts III, IV, VI, VIII, IX, X, and XI against the Fort Myers Police Department, among others. "Sheriff's departments and police departments are not usually considered legal entities

subject to suit," but the law of the state where the court is located determines the capacity of a party to be sued. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992); Fed. R. Civ. P. 17(b)). In Florida, municipalities are subject to suit, but municipal police departments are not. *See Fla. City Police Dep't v. Corcoran*, 661 So. 2d 409, 410 (Fla. Dist. Ct. App. 1995); *Rosa v. City of Fort Myers*, No. 205-CV-481-FTM-29SPC, 2007 WL 3012650, at *8 (M.D. Fla. Oct. 12, 2007) (concluding that the Fort Myers Police Department is not an entity that can be sued because it is not a separate legal entity from the City). Thus, the Court dismisses the claims against the Fort Myers Police Department in Counts III, IV, VI, VIII, IX, X, and XI.

Third, the amended complaint names defendants in incorrect capacities. The case caption and introductory paragraph of the amended complaint represents that Plaintiff sues each officer and Chief Fields in both their individual and official capacities. (Doc. 12 at 1–2). But Plaintiff then fails to specify in what capacity each defendant is being sued in each claim. To the extent Plaintiff brings Counts I, II, III, V, and VI against the officers and Chief Fields in their official capacities, this is improper. "In contrast to individual capacity suits, when an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (internal quotation marks and footnotes omitted). Also of note,

"a municipality cannot be held liable under § 1983 on a respondeat superior theory[,] rather they are only liable "when execution of a government's policy or custom . . . inflicts the injury[.] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978). Counts I, II, III, V, and VI against the officers and Chief Fields in their official capacities are thus dismissed, as the proper vehicle for those claims is a *Monell* claim—two of which have already been pled.

Fourth, the Court agrees with Defendants that Plaintiff may not seek punitive damages against the City. (*See* Doc. 15 at 22). Plaintiff seems to acquiesce on this point, stating that she seeks punitive damages only "against the individual officers." (Doc. 17 at 19–20). The Court finds any request for punitive damages against the City improper. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983."); Fla. Stat. § 768.28(5)(a) ("The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages[.]").

Now the Court considers the claim-specific arguments in numerical order. In Count I, Plaintiff brings a § 1983 claim alleging that Officer Sanders and Officer Greene violated the Fourth Amendment as incorporated through the Fourteenth Amendment. (Doc. 12 ¶¶ 49–62). Defendants argue that

Officers Sanders and Greene are entitled to qualified immunity.  (Doc. 15 at 9–11).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  *Carruth v. Bentley*, 942 F.3d 1047, 1054 (11th Cir. 2019) (internal quotation marks and citation omitted).  "When a court concludes the defendant was engaged in a discretionary function, 'the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity.'"  *Hill v. Cundiff*, 797 F.3d 948, 978 (11th Cir. 2015) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)).  The Court must resolve qualified immunity whenever it is raised.  *Miller v. Palm Beach Cnty. Sheriff's Off.*, No. 23-13753, 2025 WL 631192, at *3 (11th Cir. Feb. 27, 2025).  At the motion-to-dismiss stage, this means the Court must find entitlement to qualified immunity and dismiss "if the complaint *fails to allege* the violation of a clearly established right."  *Id.* (citation omitted and emphasis added).

Defendants fail to argue Officers Sanders and Greene were acting within the scope of their discretionary authority. (*Cf.* Doc. 15 at 8) (arguing only Chief Fields was acting within his discretionary authority). In any event, Plaintiff takes up her burden to show Defendants are not entitled to qualified immunity. (Doc. 17 at 8–11). So it seems there is no dispute over whether the officers acted within their discretionary authority. *See Jackson v. City of Atlanta*, 97 F.4th 1343, 1356 (11th Cir. 2024) ("There is no dispute that in making an investigatory stop an officer is exercising a discretionary function."); *Kastritis v. City of Daytona Beach Shores*, 835 F. Supp. 2d 1200, 1214 (M.D. Fla. 2011) ("It is undisputed that at the time [the defendant] conducted the strip search, [the defendant] was acting within the scope of her discretionary authority as an officer[.]"). Accordingly, the Court addresses entitlement to qualified immunity.

The traffic stop, ending with the search of Plaintiff's person, can be divided into several searches and seizures for Fourth Amendment purposes: (1) the initial traffic stop, (2) the free-air sniff, (3) the search of the vehicle, (4) the search of her purse, and (5) the search of her person. Plaintiff asserts no qualified immunity argument about the initial stop, search of the vehicle, or the search of her purse. (*See generally* Doc. 17). To the extent she asserts Fourth Amendment claims based on that conduct, she has failed to meet her burden to overcome qualified immunity. *See Carruth*, 942 F.3d at 1062

10

(affirming a dismissal on qualified immunity grounds because the plaintiff "failed to offer any argument" on qualified immunity and thus did not meet his burden).  Plaintiff does argue, however, that qualified immunity does not defeat her claims based on the free-air sniff and the search of her person.  (Doc. 17 at 8–11).

As for the free-air sniff, Plaintiff argues "Officer Sanders unlawfully prolonged the traffic stop without reasonable suspicion, transitioning from a citation for window tints to a narcotics investigation without specific, articulable facts to justify the escalation."  (Doc. 17 at 9) (citing *Rodriguez v. United States*, 575 U.S. 348, 355 (2015)).  This may be so, but Plaintiff fails to allege that the stop was prolonged in her amended complaint.  Because the premise of Plaintiff's argument fails, the Court need not labor over the intricacies of the Fourth Amendment for this claim.

In Plaintiff's amended complaint, she provides only that Officer Sanders instructed another officer to write a ticket for a tint violation, that she and the driver asked for the ticket so they could leave, and that Officer Sanders told them they would have to wait as he was performing the free-air sniff.  (Doc. 12 ¶¶ 25, 26).  For all we know, the free-air sniff may have occurred while the other officer was reasonably completing the ticket.  Plaintiff alleges no facts about the timeline of events.  Besides providing what Officer Sanders said about the sniff, she says nothing about whether it occurred.  This matters

because a stop remains lawful "only so long as unrelated inquiries do not measurably extend the duration of the stop." *Rodriguez*, 575 U.S. at 355. So the Court dismisses Count I against Officer Sanders.

As for the search of Plaintiff's person, she argues "Officer Green[e] conducted an invasive and highly intrusive physical search of Plaintiff's person, exceeding the scope of what is reasonable under the Fourth Amendment" without "probable cause or under exigent circumstances[.]" (Doc. 17 at 9) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The Court agrees that, as alleged, Officer Greene lacked probable cause, or even arguable probable cause.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches . . . shall not be violated, and no warrants shall issue, but upon probable cause[.]" U.S. Const. amend. IV. "[A] search or seizure of a person must be supported by probable cause particularized with respect to that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979); *see also Kastritis v. City of Daytona Beach Shores*, 835 F. Supp. 2d 1200, 1216 (M.D. Fla. 2011) ("Under the law, a law enforcement officer may subject an individual to a strip search only upon a particularized showing of probable cause that would justify 'going beyond a search of the outer clothing and belongings.'"). An officer is entitled to qualified immunity, however, if she had even "arguable probable cause" to search. *Hardigree v. Lofton*, 992 F.3d 1216, 1225 (11th Cir. 2021) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d

12

1244, 1251 (11th Cir. 2013)).  "Arguable probable cause exists if 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed.'"  *Id.* (quoting *Swint v. City of Wadley*, 51 F.3d 988, 996 (11th Cir. 1995)).

Taking Plaintiff's allegations as true, no reasonable officer could have believed that there was probable cause to search her person.  The only evidence the officers found was the drugs on the driver's shoe.  (Doc. 12 ¶ 40).  They found nothing in the vehicle or her purse.  (*Id.*  ¶¶ 35–39).  Yet Officer Greene searched under her dress and touched and swiped around her genital area.  (*Id.* ¶¶ 43–45).  Officer Greene had no arguable probable cause *particularized to Plaintiff.*

The seminal case on particularized probable cause is *Maryland v. Pringle*, 540 U.S. 366 (2003).  In *Pringle*, officers stopped a car for speeding, and the driver consented to a search of the car.  *Id.* at 368.  Officers found $763 in cash in the glove compartment and five plastic baggies of cocaine behind the backseat armrest.  *Id.*  All three passengers denied owning the money or drugs.  *Id.* at 368–69.  On appeal, the Supreme Court upheld the arrest of the front-seat passenger.  *Id.* at 374.  The Court relied on the fact that cash was found directly in front of the passenger's seat in the car, none of the passengers admitted involvement, and the cash and quantity of drugs suggested a likelihood of a common enterprise (drug dealing).  *Id.* at 373.  These "historical

13

facts, viewed from the standpoint of an objectively reasonable police officer" supported "a reasonable ground for belief of guilt [that was] particularized with respect to the person to be searched or seized[.]" *Id.* at 371.

Here, the officers did not find a large amount of cash. They found nothing in Plaintiff's purse. They found drugs, but the drugs were on the driver's shoe, not near Plaintiff. *Id.* at 373 (explaining that "any inference that everyone on the scene of a crime is a party to it must disappear" if the government "singles out the guilty person"). And the amount of drugs did not indicate a likelihood that the driver and Plaintiff were engaged in the common enterprise of dealing drugs. Despite finding no evidence pointing to Plaintiff, Officer Greene searched under her dress. No reasonable officer could believe that there was particularized probable cause to do so. And courts have relied on Eleventh Circuit precedent to reject qualified immunity on this same basis. *See McCloud v. Fortune*, No. 4:05CV101-RH/WCS, 2005 WL 3274648, at *2 (N.D. Fla. Dec. 2, 2005), *aff'd in part*, 262 F. App'x 947 (11th Cir. 2008) (misapplying the lower standard of reasonable suspicion yet nonetheless finding a violation of clearly established rights when an officer searched an occupant of a vehicle without a particularized basis); *Sims v. Glover*, 84 F. Supp. 2d 1273, 1282 (M.D. Ala. 1999) (finding a violation of clearly established constitutional rights when the defendants searched the plaintiff only because he was present at a residence during the execution of a search warrant). At

this stage, Count I survives qualified immunity to the extent Plaintiff challenges Officer Greene's search of her person.

In Count II, Plaintiff brings a § 1983 claim alleging that the officers on the scene (other than Officers Sanders and Greene) failed to intervene. (Doc. 12 ¶¶ 48–63). Defendants argue that these officers are also entitled to qualified immunity. (Doc. 15 at 9). The Court agrees.

Plaintiff cites a handful of decisions to argue that she states a failure-to-intervene claim and that the claim is not defeated by qualified immunity. (Doc. 17 at 10, 12). But none of these opinions involve an alleged failure to intervene in the context of an unlawful search. For this reason alone, Plaintiff has failed to meet her burden to show qualified immunity does not apply.

Moreover, "courts in the Eleventh Circuit have repeatedly noted it is unclear whether this 'bystander' liability exists outside of the excessive force context." *O'Keefe v. Patterson*, No. 818CV01957T02CPT, 2019 WL 652509, at *9 (M.D. Fla. Feb. 15, 2019) (collecting cases). At least one other circuit court has observed the Eleventh Circuit as having "refused to find a clearly established duty to intervene to stop other constitutional violations[.]" *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) (citing *Jones v. Cannon*, 174 F.3d 1271, 1286 (11th Cir. 1999)). As these opinions illustrate, Plaintiff's failure-to-intervene claim—brought in the context of an unlawful search—was not clearly established. The Court dismisses Count II.

In Count III, Plaintiff brings a *Monell* claim against Chief Fields, the Fort Myers Police Department, and the City for failure to train and supervise. (Doc. 12 ¶¶ 64–84). "To impose *Monell* liability, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir. 2021) (internal citation omitted). "In limited circumstances, a local government's decision not to train certain employees to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Weiland*, 792 F.3d at 1328 (cleaned up and internal citation omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Plaintiff "must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009).

The Court has already dismissed Count III against the Fort Myers Police Department and Chief Fields to the extent it is brought against him in his official capacity. The Court also dismisses both of Plaintiff's *Monell* claims to the extent they are brought against Chief Fields in his individual capacity. *See*

16

*Fountain v. City of Lakeland*, No. 8:11-CV-52-T-17TBM, 2011 WL 3703454, at *1 (M.D. Fla. Aug. 23, 2011) ("*Monell* claims do not apply to claims against individuals[.]").  All that remains of Count III is a *Monell* claim against the City.

Defendants argue that Plaintiff offers only conclusory allegations to support this claim.  (Doc. 15 at 14–15).  Their argument is spot on.  Count III is nine pages of buzzwords.  The only hint of a factual allegation is found in a footnote, in which Plaintiff cites three City of Fort Myers Citizens Review Board Agenda documents.  (Doc. 12 at 25 n.1).  The documents appear to be meeting minutes from meetings to consider, among other things, citizen complaints.  (*Id*.).  Plaintiff does not provide any context or explanation on why she cites these documents or how the contents of the documents establish a policy.  As Defendants point out, the minutes seem to negate Plaintiff's conclusory allegations that the City has failed to investigate and supervise its officers.  With nothing but conclusory language and three unexplained links to meeting minutes, Plaintiff is left with only her own incident to support the *Monell* claim.  This is insufficient.  *See McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (requiring allegations of a custom or policy "prevents the imposition of liability based upon an isolated incident").  The Court dismisses Count III.

In Count IV, Plaintiff alleges that the Fort Myers Police Department (now dismissed), the City, and Officer Sanders violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*. (Doc. 12 ¶¶ 85–89). Defendants argue that the "facts and allegations of this complaint do not support a Title VI claim." (Doc. 15 at 16). The Court agrees.

"Title VI prohibits discrimination on account of race, color, or national origin in all programs and activities receiving federal financial assistance." *Mack v. City of High Springs*, 486 F. App'x 3, 7 (11th Cir. 2012) (quotation omitted). Plaintiff's allegations have nothing to do with being "denied participation in a federally funded program[.]" *Id*. And Courts have rejected similar attempts to challenge traffic stops under Title VI. *See, e.g.*, *Brewer v. City of Gulf Breeze*, No. 3:15CV573/RV/EMT, 2016 WL 4134604, at *5 (N.D. Fla. June 24, 2016), *report and recommendation adopted*, 2016 WL 4111331 (July 29, 2016) (finding that the plaintiff did not "allege any facts that plausibly suggest that the issuance of the traffic citations or her convictions for the traffic infractions involved a Federally assisted program"). The Court dismisses Count IV.

In Count V, Plaintiff brings a § 1983 claim alleging that Officer Sanders violated the Equal Protection Clause of the Fourteenth Amendment. (Doc. 12 ¶¶ 90–93). Plaintiff alleges that Officer Sanders "engaged in racial profiling by targeting Plaintiff based on race and/or ethnicity without any legitimate

18

basis, in violation of Plaintiff's constitutional rights." (*Id*. ¶ 92). Defendants' only argument directed to Count V is the general assertion that it cannot be brought against Officer Sanders in his official capacity. (Doc. 15 at 12–13). But Defendants generally argue that the amended complaint is conclusory. This is true for Count V. It contains four paragraphs. One paragraph improperly incorporates all preceding paragraphs. (Doc. 12 ¶ 90). The other three are boilerplate, threadbare recitals. (*Id*. ¶¶ 91–93). Accordingly, the Court dismisses Count V.

In Count VI, Plaintiff brings another *Monell* claim against Chief Fields (now dismissed), the Fort Myers Police Department (now dismissed), and the City. (Doc. 12 ¶¶ 95–102). Count VI is not based on a failure to train and supervise like Count III. Rather, Plaintiff alleges that the City "acted with reckless and deliberate indifference to the rights and liberties of Plaintiff, and have purposefully, intentionally willfully, and knowingly maintained, enforced, and applies an unconstitutional custom, policy, and/or practice of Fourth Amendment violations." (*Id*. ¶ 98). This quoted excerpt is representative of the rest of Plaintiff's claim—it is just more buzzwords without substance. Plaintiff provides little to no factual support for a custom, policy, or practice. The Court dismisses Count VI.

In Count VII, Plaintiff brings a battery claim under state law against Officer Greene related to the search of Plaintiff's person. (Doc. 12 ¶¶ 103–08).

Defendants argue that Officer Greene is statutorily immune from this claim, as alleged. (Doc. 15 at 17).

On this point, Florida law provides:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). Plaintiff does not allege that Officer Greene acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Nor does Plaintiff meaningfully respond to Defendants' argument. (Doc. 17 at 14–15). The Court agrees with Defendants that Plaintiff must at least attempt to allege—with supporting facts—that Officer Greene acted with the requisite bad faith, malicious purpose, or wanton and willful disregard to avoid immunity. The Court dismisses Count VII.

In Count VIII, Plaintiff sues all Defendants for IIED under state law. (Doc. 12 ¶¶ 109–18). Defendants argue the City is statutorily immune from this claim. (Doc. 15 at 18). Once again, Plaintiff does not respond to this argument. (Doc. 17 at 16) (confusingly characterizing Defendants' argument

as challenging whether she sufficiently alleged outrageous conduct). The Court agrees with Defendants.

Florida Statute § 768.28 is relevant again. The statute allows a tort claim against a "governmental entity . . . unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard[.]" Fla. Stat. §768.28(9)(a). Similarly, it provides that the "state or its subdivisions are not liable in tort for the acts or omissions of an officer, employee, or agent committed" under these circumstances. *Id.* "Florida courts have long recognized" that this provision "bars claims for . . . intentional infliction of emotion distress." *Weiland,* 792 F.3d at 1330. That's because the reckless conduct element of IIED "'would at least constitute willful and wanton conduct' under § 768.28(9)(a)[.]" *Id.* (quoting *Williams v. City of Minneola*, 619 So. 2d 983, 986 (Fla. Dist. Ct. App. 1993)). Accordingly, the Court dismisses Count VIII against the City.

In Count IX, Plaintiff brings a negligent-hiring claim under state law against Chief Fields, Fort Myers Police Department (now dismissed), and the City. (Doc. 12 ¶¶ 119–31). Defendants argue that this claim is unsupported by factual allegations. (Doc. 15 at 19). The Court agrees.

To state a claim for negligent hiring, Plaintiff must allege "(1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the

unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known." *Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002) (quoting *Garcia v. Duffy*, 492 So. 2d 435, 438 (Fla. Dist. Ct. App. 1986)). "Negligent hiring occurs when, *prior to the time the employee is actually hired*, the employer knew or should have known of the employee's unfitness[.]" *Garcia*, 492 So. 2d at 438 (emphasis added).

Aside from referring to the underlying traffic stop and search at issue, Plaintiff provides only boilerplate, conclusory allegations to support her negligent-hiring claim. (Doc. 12 ¶¶ 119–31). Plaintiff offers no facts about what Chief Fields and the City knew or should have known "before the time [Plaintiff was] hired[.]" *Malicki*, 814 So. 2d at 362 n.15. In response to the motion to dismiss, Plaintiff points to paragraphs from one of her *Monell* claims to support her negligent-hiring and negligent-retention claims. (Doc. 17 at 17) (pointing to ¶¶ 70–78). Aside from being located under another count, these allegations are also largely conclusory and offer no pre-employment facts. The Court dismisses Count IX.

In Count X, Plaintiff brings a negligent-retention claim under state law against Chief Fields, Fort Myers Police Department (now dismissed), and the

City. (Doc. 12 ¶¶ 132–42). Defendants argue that this claim is conclusory, much like the negligent-hiring claim. (Doc. 15 at 19–21). The Court agrees.

"Liability for negligent supervision or retention . . . occurs after employment begins, where the employer knows or should know of an employee's unfitness and fails to take further action such as 'investigating, discharge or reassignment.'" *Malicki*, 814 So. 2d at 362 n.15 (quoting *Garcia*, 492 So. 2d at 438–39). "To state a cause of action for negligent supervision or negligent retention under Florida law the claimant must allege: (1) the existence of a relationship giving rise to a legal duty to supervise; (2) negligent breach of that duty; and (3) proximate causation of injury by virtue of the breach." *Albra v. City of Fort Lauderdale*, 232 F. App'x 885, 888 (11th Cir. 2007) (citing *Roberson v. Duval Cnty. Sch. Bd.*, 618 So. 2d 360, 362 (Fla. Dist. Ct. App. 1993)).

Plaintiff's negligent-retention claim is deficient, much like her negligent-hiring claim. She refers to the underlying traffic stop and search but otherwise provides only conclusory allegations. (Doc. 12 ¶¶ 132–42). While Plaintiff's negligent-hiring claim fails, in part, because she does not offer pre-employment allegations, her negligent-retention claim fails because she does not offer pre-incident allegations. After all, to prevail on this claim, she must show that Defendants' negligent retention of the officers was the proximate cause of the allegedly unlawful stop and search. *See Albra*, 232 F. App'x at 888. So the

stop and search cannot be the sole reason Defendants should not have retained the officers.  Accordingly, the Court dismisses Count X.

In Count XI, Plaintiff alleges that all Defendants (Fort Myers Police Department now dismissed) violated the Florida Constitution's prohibition on unreasonable searches and seizures.  (Doc. 12 ¶¶ 143–48).  Defendants argue this claim is duplicative of Plaintiff's federal claims, citing *Johnston v. Tampa Sports Authority*, 530 F.3d 1320, 1325–26 (11th Cir. 2008).  (Doc. 15 at 21).  Yet *Johnston* simply states that both the state and federal constitutions provide protections against unreasonable searches and seizures and that court's analysis of the Fourth Amendment claim applies equally to the Florida Constitution claim.  *See Johnston,* 530 F.3d at 1325–26.  *Johnston* does not hold that Plaintiff cannot bring a suit based on both the state and federal constitutions.  So the Court does not dismiss Count XI as duplicative.

In Count XII, Plaintiff alleges that Officer Greene violated Florida Statute § 901.211.  (Doc. 12 at 42–44) (paragraphs misnumbered).  That Florida statute details when and how strip and cavity searches may be performed.  *See* Fla. Stat. § 901.211(1)–(6).  Defendants argue this claim is duplicative of Plaintiff's Fourth Amendment claim.  (Doc. 15 at 21–22).  But Count XII fails for another reason.  Florida Statute § 901.211 does not create an independent cause of action.  *See Doe v. City of Miami, Fla.*, No. 23-23712-CIV, 2024 WL 3070783, at *5 (S.D. Fla. June 20, 2024) ("Because the statute

24

similarly does not expressly list a cause of action for damages as a remedy available for violations of the statute, the Court concludes that the statute itself does not state an independent cause of action."). Thus, the Court dismisses Count XII.

Accordingly, it is

**ORDERED:**

(1) The Court **DISMISSES** these Counts **with prejudice**:

    a. All counts against the Fort Myers Police Department;

    b. Count II and IV;

    c. Counts I and V against the officers in their official capacities only;

    d. Counts III and VI against Chief Fields in his official and individual capacities; and

    e. Count VIII against the City only.

(2) The Court **STRIKES** all claims for punitive damages against the City.

(3) The Court otherwise **DISMISSES** the amended complaint (Doc. 12) **without prejudice and with leave to amend**.

(4) **On or before March 24, 2025**, Plaintiff must file a second amended complaint consistent with this Order. **Failure to do so may result in the Court dismissing this action and closing the case without further notice.**

**DONE** and **ORDERED** in Fort Myers, Florida on March 17, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

26