UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TREKESSA GILLIAM,

     Plaintiff,

v.                                  Case No.:  2:24-cv-990-SPC-NPM

JASON FIELDS, JARI SANDERS,
CITY OF FORT MYERS,
NICHOLE GREENE, HARRISON
WILLIAMS, BRANDON BIRCH,
ERICA SALTER, RYAN AMADOR,
JAMES MOSCHELLA, and
GREGORY REDDINGTON,

     Defendants.

_____/

## OPINION AND ORDER

Before the Court is Defendants City of Fort Myers, Jason Fields, Jari Sanders, Nichole Greene, Harrison Williams, Brandon Birch, Eric Salter, Ryan Amador, James Moschella, and Gregory Reddington's Motion to Dismiss (Doc. 43) and Plaintiff Trekessa Gilliam's Response (Doc. 47).  For the below reasons, the Court grants the motion.

## Background

This is a civil rights case.[1]  The Court has already described the facts of this case, as alleged by Plaintiff, and need not recite them in detail again here. (Doc. 31 at 2–3).  A summary will do.  Plaintiff was a passenger in a vehicle that Officer Sanders pulled over.  (Doc. 41 ¶ 21–22).  Officer Amador wrote the driver a ticket for illegal window tint, and Officer Williams walked a dog around the car for a free-air sniff.  (*Id*. ¶¶ 24, 35).  Officers then searched the car, and Officer Greene later searched Plaintiff's person.  (*Id*. ¶¶ 36, 51–53). Other officers were also on the scene that did not participate in the searches. (*Id*. ¶ 58).  Plaintiff sues the City of Fort Myers, Chief of Police Jason Fields, and all the officers under 42 U.S.C. § 1983 and brings related state-law claims. (Doc. 41).  Defendants move to dismiss.  (Doc. 43).

## Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  If a court can draw reasonable inferences of a defendant's liability

---

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiff.  *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

from the facts pled, then the claim is "facially plausible." *Iqbal*, 556 U.S. at 678. "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action" are simply not enough. *Twombly*, 550 U.S. at 555.

## Analysis

The Court starts by addressing Plaintiff's non-compliance with the Court's prior dismissal Order (Doc. 31). Next, the Court addresses a new problem for Plaintiff's claims—the videos from the officers' body cameras and their vehicles.

This is not the first time the Court has reviewed Plaintiff's allegations. In the last dismissal Order, the Court noted that the amended complaint was riddled with typos and directed Plaintiff to correct them. (*Id*. at 4). The third amended complaint remains a mess. Plaintiff labels her pleading both the "THIRD AMENDED COMPLAINT" and "SECOND COMPLAINT." (Doc. 41 at 1). She continues to misname officers, labeling Officer Sanders as both "Saunders" and "Sandders," Officer Salter as "Salters," and Officer Greene as "Green." (*See, e.g.*, *id*. ¶¶ 8, 11, 34, 48–55, 80, 153, 154). Like last time, she sloppily calls herself "PLAINTFF," "PLAITNIFF," and "PALINTIFF." (*Id*. ¶¶ 45, 47, 50). And again she refers to herself as "him" and "his." (*Id*. ¶¶ 74, 182). The Court ordered Plaintiff to fix these errors. She did not.

The Court also held that Plaintiff's amended complaint was a quintessential shotgun pleading. Federal Rule of Civil Procedure 8 requires a

3

complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Shotgun pleadings violate Rule 8 because "they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). The amended complaint was a shogun pleading because it contained "multiple counts where each count adopts the allegations of all preceding counts" and "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." (Doc. 31 at 5–6). This remains true for the third amended complaint.

In each count, Plaintiff continues to "repeat[] all of the allegations contained in the Complaint thus far above, and incorporate[] same as if fully set forth at length herein[.]" (Doc. 41 ¶¶ 59, 82, 107, 118, 134, 142, 163, 180). The Court recognizes that Plaintiff cites to certain paragraphs under each count. (*Id*.). But the fact remains that each count incorporates all preceding paragraphs, leaving Defendants sorting through all of the allegations to try to determine which facts are relevant to the claims against them. This is improper. Compounding this problem, Plaintiff continues to use group pleading. For example, she brings Count I against both Officers Sanders and Greene, even though their conduct and her claims against them are distinct.

(*Id*. ¶¶ 59–81).  The Court has already given Plaintiff a chance to fix these deficiencies and will not give her another.  *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds.").

There are new reasons to dismiss Plaintiff's claims, too.  Defendants have provided videos from the officers' body cameras and vehicles.[2]  These videos show that Plaintiff cannot plausibly state a claim.

At the motion to dismiss stage, "a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged."  *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).  "The Eleventh Circuit has extended the incorporation-by-reference doctrine beyond 'written instruments' to include body camera footage."  *Clark v. Collier Cnty. Sheriff Kevin Rambosk*, No. 2:24-CV-692-SPC-NPM, 2025 WL 589241, at *2 (M.D. Fla. Feb. 24, 2025) (quoting *Swinford v. Santos*, 121 F.4th 179, 187 (11th Cir.

---

[2] Defendants conventionally filed a flash drive containing these video exhibits in support of their motion to dismiss.  (Doc. 36).  The Court cites these exhibits by referring to the exhibit letter and the approximate time stamp displayed in the upper right corner of each video.

2024)).  And "where a video is clear and obviously contradicts the plaintiff's alleged facts" the Court will "accept the video's depiction instead of the complaint's account . . . and view the facts in the light depicted by the video[.]" *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1277 (11th Cir. 2023).

The officers' videos depict the incident that is central to Plaintiff's claims, and Plaintiff does not challenge the videos' authenticity.  They provide both visual and audio depictions of the incident.  And they show the incident clearly and from several angles.  So the Court considers them without converting the motion to dismiss to a motion for summary judgment.  *See Clark*, 2025 WL 589241, at *3 (citing *Johnson*, 107 F.4th at 1301).

The videos contradict and defeat Plaintiff's Fourth Amendment claims (Count I).  Under the Fourth Amendment, a seizure "justified only by a police-observed traffic violation" is "unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015) (cleaned up).  Plaintiff claims that Officer Sanders prolonged the traffic stop to allow the dog's free-air sniff.  In support, she alleges that an officer was "prepared to hand the driver his ticket and documentation back" when Officer Sanders told him to wait.  (Doc. 41 ¶ 25).  But the videos tell another story.  They show that Officer Sanders directed Officer Amador to write the driver a ticket for illegal tint.  (Exhibit A at 13:40:25).  Officer Amador then reasonably worked on

6

writing the ticket while Officer Williams conducted the free-air sniff.  (Exhibit D at 13:42:25, Exhibit F at 13:40:50).  And only two and a half minutes elapsed from the time Officer Sanders directed Officer Amador to write the ticket to the time the dog alerted on the vehicle.  (Exhibit A at 13:40:25, Exhibit D at 13:43:00).  Plaintiff's allegation that Officer Sanders instructed another officer to delay issuing the ticket is false.  And the videos show that the traffic stop was not unreasonably prolonged to allow the free-air sniff.

Plaintiff also claims that Officer Greene lacked probable cause to search her person.  On this point, the Fourth Amendment requires that "a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).  But probable cause "is not a high bar." *D.C. v. Wesby*, 583 U.S. 48, 57 (2018).  "A police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (cleaned up).  All that is required is a "fair probability," in light of the totality of the circumstances and common sense. *Id*. at 244.

To support her claim that Officer Greene lacked probable cause, Plaintiff alleges that the dog found nothing during its sniff and that the officers found nothing in the car.  (Doc. 41 ¶¶ 35–36).  But the videos contradict her claim. They show the officers stating how the driver and Plaintiff were moving around

in the car during the stop.  (Exhibit A at 13:54:35).  They show the dog alerting on the passenger side of the car.  (Exhibit D at 13:43:00).  They show that on the glove box and rear passenger door—the areas surrounding where Plaintiff was sitting—the officers found residue that field tested positive for cocaine. (Exhibit D at 13:46:55, 13:50:30).  They show that the officers also found cocaine residue on the driver's shoe.  (Exhibit A at 13:53:04).  And they show Plaintiff being confrontational with the officers, often arguing with them with her cellphone raised in their faces.  (Exhibit D at 13:40:43; Exhibit K at 13:55:11).  Given these facts, Officer Greene had probable cause to search Plaintiff.[3]

The videos also undermine Plaintiff's equal protection claim (Count III). Plaintiff alleges that Officer Sanders discriminated against her based on race and gender.  (Doc. 41 ¶ 110).  Her allegations about race are completely conclusory and unsupported by the videos.  (*Id.* ¶¶ 110, 113).  And her allegations about gender—that Officer Sanders targeted her because she was a woman and Officer Greene's search of her was more invasive because she was a woman (*Id.* ¶¶ 112–15)—are refuted by the videos.  Both the male driver

---

[3] The Court previously held that, as alleged in the amended complaint, Officer Greene lacked probable cause to search Plaintiff.  (Doc. 31 at 13).  But this holding depended on Plaintiff's allegations that no evidence of criminal activity was found in the car and that the only evidence was found on the driver's shoe.  (*Id.*).  With the benefit of the body camera videos, the Court now knows that the officers were concerned with Plaintiff's movements in the car and found cocaine residue in the area surrounding where Plaintiff was sitting.

and Plaintiff were searched.  And Officer Sanders searched the male driver in the same way that Officer Greene searched Plaintiff.  (Exhibit A 13:55:38, Exhibit K at 13:55:25).  Plaintiff cannot plausibly allege an equal protection claim.[4]

Plaintiff's battery and intentional infliction of emotional distress (IIED) claims (Counts V and VI) fare no better.  She alleges that Officer Greene's search of her person was "performed with bad faith, malicious purpose, wanton, and willful disregard for Plaintiff's constitutional rights." (Doc. 41 ¶ 135).  According to Plaintiff, Officer Greene searched her without probable cause and was threatening, intimidating, sexualizing, and degrading. (*Id*. ¶¶ 136–39).  But, as discussed above, there was probable cause to search Plaintiff.  The videos also show that Officer Greene was not acting in bad faith or maliciously.  Nor was she threatening, intimidating, sexualizing, or degrading during the search.  (Exhibit K at 13:55:25).  In fact, despite Plaintiff's confrontational demeanor, Officer Greene and the other Defendants remained calm and professional throughout traffic stop.  Officer Greene conducted an

---

[4] Plaintiff also failed to meet her burden to show that qualified immunity does not bar her Fourth Amendment and equal protection claims.  Defendants invoke qualified immunity and have established that they were acting within the scope of their discretionary authority during the incident. (Doc. 43 at 12).  So Plaintiff bears the burden to show that Defendants are not entitled to qualified immunity. *See Hill v. Cundiff*, 797 F.3d 948, 978 (11th Cir. 2015).  But Plaintiff—who is represented by counsel—does not seriously attempt to carry her burden.  In fact, she does not cite a single authority to support her equal protection claim. (Doc. 47 at 9–11).

ordinary search as a police officer. Her actions cannot support a battery claim. *See, e.g.*, *Baxter v. Roberts*, 54 F.4th 1241, 1273 (11th Cir. 2022) (affirming a district court's grant of summary judgment on a battery claim against a police officer because "ordinary incidents of an arrest . . . do not give rise to an independent tort" and the plaintiff's battery claim was "no stronger than his unpersuasive § 1983 claim"). Plaintiff's IIED claim is similarly baseless, as the videos do not depict any conduct that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1368 (11th Cir. 2024) (quoting *Metro. Life Ins. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985)).

Because Plaintiff's claims against the individual officers fail, so too do her claims against the City of Fort Myers. Without a constitutional violation, she cannot maintain her *Monell* claims (Counts II and IV). *See Teel v. Lozada*, 99 F.4th 1273, 1288 (11th Cir. 2024) (holding that a *Monell* claim failed because "there was no underlying constitutional violation"). Similarly, her negligent retention claim (Count VII) fails because it hinges on a violation of the Constitution. (*See, e.g.*, Doc. 41 ¶ 176 ("DEFENDANTS negligently retained Defendant officers in a position of trust and authority over the community, where they were able to commit constitutional violations toward the Plaintiff.")).

Finally, her claim under the Florida Constitution (Count VIII) fails for the same reasons her claims under the United States Constitution fail. *See Johnston v. Tampa Sports Auth.*, 530 F.3d 1320, 1326 (11th Cir. 2008) ("Our analysis of . . . claims under the Fourth Amendment therefore applies equally to . . . claims under the Florida Constitution.").

In summary, the third amended complaint remains a typo-riddled shotgun pleading. Given the videos of the incident, Plaintiff cannot plausibly state a Fourth Amendment, equal protection, battery, or IIED claim. And, without those claims, Plaintiff's *Monell*, negligent retention, and Florida Constitution claims necessarily fail. Because this is Plaintiff's fourth attempt at pleading her claims, and further amendment would be futile, the Court dismisses her claims with prejudice.

Accordingly, it is

**ORDERED:**

(1) Defendants' Motion to Dismiss (Doc. 43) is **GRANTED.**

(2) The Third Amended Complaint (Doc. 41) is **DISMISSED with prejudice.**

(3) The Clerk is **DIRECTED** to deny any pending motions as moot, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on June 20, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record