UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TREKESSA GILLIAM,

    Plaintiff,

v.                                               Case No.:  2:24-cv-990-SPC-NPM

JASON FIELDS, JARI SANDERS,
CITY OF FORT MYERS,
NICHOLE GREENE, HARRISON
WILLIAMS, BRANDON BIRCH,
ERICA SALTER, RYAN AMADOR,
JAMES MOSCHELLA, and
GREGORY REDDINGTON,

    Defendants.

## **OPINION AND ORDER**

Before the Court are Plaintiff Trekessa Gilliam's Motion for Reconsideration (Doc. 50) and Defendants' response (Doc. 52).  For the below reasons, the Court denies the motion.

Reconsideration of a prior order is an extraordinary measure that should be applied sparingly.  *Adams v. Beoneman*, 335 F.R.D. 452, 454 (M.D. Fla. 2020).  Court orders are not intended as first drafts subject to revisions at a litigant's pleasure, so a movant must establish extraordinary circumstances supporting reconsideration.  *Gold Cross EMS, Inc. v. Child.'s Hosp. of Ala.*, 108

F. Supp. 3d 1376, 1384 (S.D. Ga. 2015). No such extraordinary circumstances exist here.

This is a civil rights action arising from a traffic stop and search. Plaintiff asks the Court to reconsider its order dismissing this action with prejudice. (Doc. 48). In that order, the Court reviewed the third amended complaint, considered body camera footage from officers involved in the underlying incident, and held that the third amended complaint was a shotgun pleading and Plaintiff failed to state a claim. (*Id.*). The third amended complaint was a shotgun pleading because Plaintiff incorporated all preceding paragraphs under each count. (*Id.* at 4–5). Plaintiff failed to state a claim because the body camera footage shows Defendants had probable cause to search her, did not unreasonably prolong the traffic stop, and did not discriminate against her based on gender or race. (*Id.* at 6–9). Nor did Defendants act in bad faith or outrageously. (*Id.* at 9–10). For these reasons, her Fourth Amendment, equal protection, Florida Constitution, battery, and intentional infliction of emotional distress ("IIED") claims failed. (*Id.* at 6–11). With these claims dismissed, her derivative claims—*Monell* and negligent retention claims—also failed. (*Id.* at 10).

Now, Plaintiff asks the Court to reconsider almost all of its holdings. At a broad level, the Court denies her motion because it merely attempts to relitigate the issues from the last motion to dismiss briefing. *See PaineWebber*

*Income Props. v. Mobil Oil Corp.*, 902 F. Supp. 1514, 1521 (M.D. Fla. 1995) ("A motion for reconsideration should raise new issues, not merely readdress issues previously litigated."). Plaintiff had multiple rounds of briefing to raise her arguments before the Court dismissed her fourth attempt at pleading claims. That said, the Court examines and rejects each argument. They are grouped in seven buckets.

First, Plaintiff argues the Court erred in finding her third amended complaint is a shotgun pleading. She asserts that "the Court overlook[ed] the fact that each count of the Third Amended Complaint specifically identifies which factual paragraphs support the claim asserted in that count." (Doc. 50 at 4). Plaintiff is wrong. The Court explicitly stated it "recogniz[ed] that Plaintiff cites to certain paragraphs under each count." (Doc. 48 at 4). But it also observed that under each count Plaintiff "repeats all of the allegations contained in the Complaint thus far above, and incorporates same as if fully set forth at length herein[.]" (*Id.* (quoting the third amended complaint)). Compounding this problem, Plaintiff utilized group pleading. (*Id.*). Because the Court had already warned her about these issues (*see* Doc. 31), it properly dismissed her third amended complaint with prejudice on this ground. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him *one chance* to replead

3

before dismissing his case with prejudice on non-merits shotgun pleading grounds."(emphasis added)).

Second, Plaintiff argues the Court improperly resolved factual disputes at the pleading stage. (Doc. 50 at 18). On this point, she asserts that the body camera videos are "not attached to or incorporated into the Complaint, and Plaintiff has not conceded [their] authenticity or completeness." (*Id.*). But the Court may consider the videos even though Plaintiff did not attach them to or reference them in the third amended complaint. *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024) (holding that evidence considered under the incorporation by reference doctrine need not be referred to or attached to the complaint). Nor can Plaintiff prevent this by baldly asserting now that she "has not conceded" their authenticity. She never challenged the videos' authenticity in her response to the motion to dismiss. (*See generally* Doc. 47). And she still gives no reason to question their authenticity.

"[W]here a video is clear and obviously contradicts the plaintiff's alleged facts" the Court will "accept the video's depiction instead of the complaint's account . . . and view the facts in the light depicted by the video[.]" *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1277 (11th Cir. 2023). That's exactly what happened here.

Third, Plaintiff argues the Court "mischaracterized the timeline of events" in its dismissal order. (Doc. 50 at 6). She claims that the Court's

4

dismissal order "misconstrues and reorders the facts . . . creating an inaccurate narrative suggesting the Plaintiff's search was based on justified suspicion prior to the vehicle and canine searches." (*Id.* at 7). This is wrong. The Court's order accurately delineates the sequences in which the events occurred and what factors support a finding of probable cause. Unlike Plaintiff's arguments, all the Court's findings are supported by time-stamped citations to the body camera videos.

She similarly asserts that Defendants' field testing of the vehicle for cocaine "occurred after her person and belongings had already been subjected to search[.]"[1] (Doc. 50 at 15). But the videos irrefutably prove her wrong. As the Court's dismissal order detailed, the field tests occurred at time stamps 13:46:55 and 13:50:30. (Doc. 48 at 8). The search of her person occurred at 13:55:25, around five and ten minutes after each field test. (*Id.* at 9). It's not even close. Plaintiff and her counsel should consider themselves fortunate that the Court does not sanction them for their misrepresentations.

Fourth, Plaintiff argues the Court "mischaracterized Plaintiff's allegation regarding the delay in issuing the ticket." (Doc. 50 at 7). She confusingly claims that "[c]ontrary to the Court's finding, the Third Amended Complaint does not allege that Officer Sanders told another officer *not to write*

---

[1] She contradicts this statement elsewhere in her own motion, stating that "the dog sniff, initial search, and field tests were completed before Plaintiff was searched." (Doc. 50 at 6).

5

the citation." (Doc. 50 at 8 (emphasis in original)). The Court never made such a finding. Rather, the Court held that "Plaintiff's allegation that Officer Sanders instructed another officer to *delay* issuing the ticket is false" and that "the traffic stop was not *unreasonably prolonged* to allow the free-air sniff." (Doc. 48 at 7 (emphasis added)). And this holding was accurate. The videos do not depict Officer Sanders instructing another officer to delay writing the ticket. The Court exhaustively watched all the body camera videos. This included the body camera videos with audio from Officer Sanders and Officer Amador (the officer who wrote the ticket). No officer ever told another officer to delay writing the ticket. And no delay occurred.

Plaintiff now comes forward with her own cell phone video evidence purporting to show an "officer prepared to return the driver's documents, at which point Sanders intervenes, indicating that the ticket would not yet be handed back because of the drug dog sniff." (Doc. 50 at 9). This is the first time the Court has heard about this video. This is a video from Plaintiff's cell phone—it is not new evidence—and the Court need not consider it. *See Reed v. Royal Caribbean Cruises Ltd.*, No. 19-24668-CIV, 2021 WL 2592888, at *11 (S.D. Fla. May 3, 2021) ("For purposes of a motion for reconsideration, evidence is not 'new' if it was in the moving party's possession or could have been discovered prior to the court's ruling." (citation omitted)). Compounding matters, but consistent with the sloppy prosecution of this case, Plaintiff does

6

not provide a pincite to the relevant portion of the video. Regardless, the Court has watched the entire cell phone video, and it does not depict Sanders instructing an officer to delay handing over a completed ticket. (*See generally* Doc. 50-1). Although the driver asks for a ticket so he and Plaintiff can go, the officers were diligently working on the ticket but had not yet completed it. Once again, Plaintiff and her counsel are lucky to avoid sanctions on this point.

Fifth, Plaintiff argues the Court erred in finding probable cause existed to search her person. (Doc. 50 at 14, 18). She says that "movement in a vehicle, without more, does not constitute probable cause." (*Id*. at 14). This is true, but of no consequence—the Court did not base its probable cause finding on movement alone. (*See* Doc. 48 at 7–8).

She also says that "field tests for trace substances have been widely recognized as unreliable and subject to false positives." (*Id*. at 15). "But 'no case at any level, in any court, has established (clearly or otherwise) that field drug tests cannot, because of possible false positives, support probable cause.'" *Carter v. Prendergast*, No. 5:22-CV-433-JA-PRL, 2023 WL 2837685, at *4 (M.D. Fla. Apr. 7, 2023) (quoting *Brown v. Sirchie Acquisition Co.*, No. 1:16-CV-175-SCJ, 2017 WL 4082690, at *12 (N.D. Ga. Feb. 17, 2017)).

Lastly on this point, she says probable cause was lacking because "the end result of the encounter [was] that nothing illegal was found on Plaintiff[.]" (Doc. 50 at 16). But whether the search of her person was fruitful has nothing

7

to do with whether Defendants had probable cause to search her to begin with. *See Kelly v. Fla. Dep't of Corr.*, No. 20-CV-14348, 2022 WL 2441344, at *6 (S.D. Fla. June 10, 2022), *report and recommendation adopted*, 2022 WL 2439142 (July 5, 2022) ("[P]robable cause does not retroactively become defunct upon the failure to discover [evidence of a crime].").

The Court considered the allegations in the third amended complaint and the content of the body camera videos in light most favorable to Plaintiff and determined that probable cause supported the search. The officers were concerned with her movements in the car. (Doc. 48 at 8). The dog alerted on her side of the car. (*Id.*). The glove box and rear passenger door—areas surrounding Plaintiff's seat—field tested positive for cocaine. (*Id.*). The officers also found cocaine residue on the driver's shoe. (*Id.*). And Plaintiff was confrontational and arguing with the officers. (*Id.*). The Court did not err in finding that, considering the totality of the circumstances and common sense, these facts supported probable cause to search her person.

Sixth, Plaintiff argues the Court erred in holding she failed to state a claim. Her arguments about whether she stated a Fourth Amendment or Florida Constitution claim are sufficiently addressed by the findings above. The Court addresses the other claims separately.

She argues the Court erred in dismissing her equal protection claim as conclusory because she alleges that Officer Sanders made statements related

8

to her gender and subjected her to a more invasive search than the male driver. (Doc. 50 at 11–12). The alleged statement is that while Plaintiff "did not have much on in terms of clothes, she is a woman so insinuating that because of that she has places she can hide the drugs." (Doc. 41 ¶ 112). This rationale, according to Plaintiff, led the officers to conduct a "cavity search" of her and not the male driver. (Doc. 50 at 11).

The Court did not err in dismissing her equal protection claim. She does not identify any nonconclusory allegation to show that she plausibly stated a claim based on race discrimination. She cannot. Nor can she state a claim for gender discrimination.[2] As the Court correctly held in its dismissal order, the officers treated the male driver and female Plaintiff the same. (Doc. 48 at 8–9). The videos show that the officers searched them in the same manner. They did not conduct a cavity search of Plaintiff.

She also argues the Court erred in dismissing her state law battery and IIED claims. (Doc. 50 at 13). For her battery claim, Plaintiff had to plausibly allege that Officer Greene searched her "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). Similarly, for her IIED claim,

---

[2] In her third amended complaint and motion for reconsideration, Plaintiff refers to gender rather than sex discrimination. (Doc. 41 ¶¶ 109, 110, 113, 138, 148; Doc. 50 at 4, 11, 17, 20). Given the nature of the allegations, it is unclear whether Plaintiff intends to allege gender discrimination or is mislabeling allegations of sex discrimination.

9

Plaintiff had to plausibly allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1368 (11th Cir. 2024) (quoting *Metro. Life Ins. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985)). But the facts, as alleged in the third amended complaint and shown in the body camera videos, do not come close to showing bad faith, malicious purpose, wanton and willful disregard, or outrageous conduct. (Doc. 48 at 9–10). The videos unambiguously show that this was an ordinary, lawful traffic stop and investigation.

Because the Court did not err in dismissing Plaintiff's Fourth Amendment, equal protection, Florida Constitution, battery, and IIED claims, it also did not err in dismissing her derivative *Monell* and negligent retention claims for failure to state a claim. (*See* Doc. 48 at 10 (explaining that, without a constitutional violation, Plaintiff's *Monell* and negligent retention claims fail as a matter of law)).

Seventh, Plaintiff argues the Court erred in holding that qualified immunity applies. (Doc. 50 at 17–18). But, as discussed above, the officers had probable cause to search her and did not unreasonably delay or discriminate during the incident. With no constitutional violation, the officers are entitled to qualified immunity. S*ee Clark v. Collier Cnty. Sheriff Kevin*

10

*Rambosk*, No. 2:24-CV-692-SPC-NPM, 2025 WL 589241, at *8 (M.D. Fla. Feb. 24, 2025) ("Having found no constitutional violation, the Court need not address the clearly established prong of the qualified immunity analysis."). And, as the Court correctly observed, Plaintiff "[did] not cite a single authority to support her equal protection claim" and carry her burden to show Defendants were not entitled to qualified immunity in the motion to dismiss briefing. (Doc. 48 at 9 n.4).

Accordingly, it is

**ORDERED:**

Plaintiff's Motion for Reconsideration (Doc. 50) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on August 14, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record